# IN THE COURT OF APPEALS OF IOWA

No. 14-1435
Filed August 19, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GUY CHRISTOPHER JOHNS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Buena Vista County, Charles K.

Borth, District Associate Judge.


        A defendant appeals his conviction for driving while barred.  **REVERSED**

**AND REMANDED.**


        Richard J. Bennett Sr. of Bennett Law Office, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney

General, Ryan Ashley, Student Legal Intern, Dave Patton, County Attorney, and

Paul Andrew Allen, Assistant County Attorney, for appellee.


        Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

Guy Johns appeals his conviction for driving while barred as a habitual offender, an aggravated misdemeanor, in violation of Iowa Code section 321.560 (2013). He contends the State failed to prove both the notice element of the licensure bar and the act of driving. Because we find the State failed to prove beyond a reasonable doubt that the Iowa Department of Transportation (DOT) mailed the notice of barred status to Johns, we reverse his conviction.

The State alleged Johns committed the offense on August 23, 2013, when Storm Lake Police Officer Breana Pearson saw him driving a U-Haul truck. Officer Pearson recognized Johns as having a barred license and arrested him when the truck reached its destination. On August 5, 2014, a jury convicted Johns of driving while barred. The court denied his motion for new trial and sentenced him to two years in prison, suspended the term, and ordered him to serve probation. On appeal, he contends the State presented insufficient evidence of his guilt or, alternatively, that the guilty verdict was against the weight of the evidence.

We review his sufficiency-of-the-evidence claim for correction of legal error. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). If we were to reach his new trial issue, we would apply an abuse-of-discretion standard. *See State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). But because we find insufficient evidence, our analysis stops there.

To convict Johns of driving while barred, the jury was required to find proof of two elements: (1) he was operating a motor vehicle and (2) at that time, his

driver's license was barred as a habitual offender and he had notice of the status of his license. *See* Iowa Code §§ 321.560, 321.561; *State v. Wise*, 697 N.W.2d 489, 492 (Iowa Ct. App. 2005). On the second element, the State did not have to show Johns actually knew his license was barred. *See State v. Carmer*, 465 N.W.2d 303, 304 (Iowa Ct. App. 1990). But the State was required to offer evidence that the DOT actually mailed the notice of his barred status to his last known address. *See State v. Green*, 722 N.W.2d 650, 652 (Iowa 2006) (interpreting saving provision at Iowa Code section 321.16). Solely furnishing a copy of the notice found in the DOT files will not satisfy that element. *Id.* Proof of the DOT mailing the license notice may be accomplished, for example, by an affidavit of mailing or by a certified mail receipt. *Id.*

On appeal, Johns points out that the State did not offer an affidavit of mailing or a certified mail receipt for the notice. Instead the State presented the testimony of Amy Sievers, a field supervisor for the DOT office of driver services. She testified she supervised the records work of the DOT stations in Spencer and Sioux City. Through her testimony, the prosecutor offered State's Exhibits 4, 5, and 6: (4) Johns's certified driving record dated March 24, 2012; (5) a certified official notice of the effective dates that his driver's license would be barred; and (6) a certificate of bulk mailing from the United States Postal Service showing 327 identical pieces of first class mail were postmarked on March 28, 2012. As Johns argues on appeal: "the certificate of bulk mailing bears no words, numbers, or symbols to show that defendant's notice was one of the 327 pieces of mail sent on March 28, 2012."

Sievers testified on direct examination that the official notice was kept as part of Johns's official driving records and indicated his privileges were barred from April 28, 2012 until April 27, 2014. Sievers also testified the bulk mail certificate was kept as part of Johns's official driving record and indicated "when the official notice would have gone out."

During Sievers's cross-examination, the following exchange occurred:

> Q. Did you mail off 327 notices of license revocation or barment that day or just 327 notices? A. It would have been 327 notices of the—of the official notice itself.
> Q. Okay. But the 327 there, you don't know, actually know if Mr. Johns' letter was in that billing? A. Yeah. I would say yes, because it's got the same date, and that's how our certificate from the postal service—that's how we keep track that they have gone out.

Sievers further testified the official notice was typed on March 24, and "[t]he mail went out March 28th is when we got our receipt." When asked why the postal service receipt did not bear the same date as the notice, Sievers testified: "it just depends." She said if the notice was generated on a Friday, "we wouldn't mail it out until Monday and that's why the receipt would be different." Sievers's explanation of the difference in dates was not particularly enlightening, as March 24, 2012, the date of the notice, fell on a Saturday, and March 28, 2012, the date of the bulk mail receipt, was a Wednesday.

In its responsive brief, the State argues "Sievers did not hesitate in confirming that Johns's notice was among those mailed out in the bulk mailing." The State continues: "This unimpeached testimony, coupled with the certificate of bulk mailing, is presumptive proof that notice was served, a presumption that Johns has failed to overcome with any contrary evidence or testimony."

We disagree with the State's portrayal of the mailing evidence. It is not clear from Sievers's testimony what her role was in the DOT process of mailing official notices. She generally stated: "Notices are sent out if somebody is going to lose their driving privilege for a certain reason." When asked about State's Exhibit 5, the official notice of Johns's barment, Sievers initially testified that it was "mailed out on March 24th, 2012"—though she later acknowledged the bulk mailing receipt bore a date stamp of March 28, 2012. We also note although Sievers supervises DOT stations in northwest Iowa, the bulk mailing notice indicates the pieces of mail were sent from Des Moines.

In her testimony, Sievers did not confirm Johns's notice was among the 327 pieces of bulk mail described on the postal service receipt. Instead she assumed his March 24 notice was in the March 28 mailing because the dates were close in time. That assumption does not satisfy the State's burden of proof as articulated in *Green*, 722 N.W.2d at 652. There, the supreme court said furnishing a copy of a DOT notice found in its files did not prove the notice was actually mailed. *Green*, 722 N.W.2d at 652. Here, the State also offered a bulk mail receipt that Sievers testified was kept as part of Johns's official driving record. But that receipt does not indicate Johns's notice was among the pieces of mail sent out. And Sievers did not explain the DOT process for placing the bulk mailing receipt into a driver's record.

The State characterizes Sievers's testimony as "unimpeached." But her cross-examination highlighted that she did not have actual knowledge Johns's notice was included in the 327-piece mailing. The State also suggests Johns

carried the burden to overcome the presumption that the notice was sent. We disagree with that burden shifting. It is the State that must prove the notice was actually mailed. *See id.*; *see also State v. Campbell*, No. 08-0106, 2008 WL 5412325, at *1 (Iowa Ct. App. Dec. 31, 2008) (reversing conviction where DOT employee explained agency's procedures for mailing notices, but the State presented no testimony or documentary evidence those procedures were followed in Campbell's case).

Iowa Code section 321.16 requires the DOT to "adopt rules regarding the giving of notice by first class mail, the updating of addresses in department records, and the development of affidavits verifying the mailing of notices under this chapter and chapter 321J." The DOT's administrative rule provides: "The department may prepare an affidavit of mailing verifying the fact that a notice was mailed by first-class mail. To verify the mailing of a notice, the department may use its records in conjunction with U.S. Postal Service records available to the department." Iowa Admin. Code r. 761-615.37(4). In this case, the State filed an Affidavit of Mailing, sworn on oath by DOT records manager Kathy McLear, as a proposed exhibit, but did not offer that exhibit at trial.

Instead, to support the notice element, the State offered the bulk mailing certificate, proving that 327 pieces of identical mail were sent on March 28, 2012, and Sievers's testimony that she believed Johns's notice was among them because of the timing. We do not find that the coincidence of the dates, standing alone, is sufficient to prove the notice was sent. The record does not establish a

time frame for when the 327 pieces in the bulk mailing were generated by the DOT or if all the notices from this period were included in the mailing.

To satisfy *Green*, the DOT must furnish records that establish a connection between the notice at issue and the mailing certificate. Without verification that Johns's notice was in the bulk mailing, we cannot find sufficient evidence to support the offense of driving while barred. Thus, we reverse and remand for dismissal of the charge.

**REVERSED AND REMANDED.**

Bower, J., concurs; McDonald, J., dissents.

**MCDONALD, J.** (dissenting)

I respectfully dissent. The verdict is supported by substantial evidence. In reviewing a challenge to the sufficiency of the evidence, we consider all record evidence "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citation omitted). A verdict will be upheld if it is supported by substantial evidence. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). Substantial evidence is the quantity and quality of evidence from which a reasonable juror could conceivably find the defendant guilty beyond a reasonable doubt. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). The department's representative testified as follows:

> Q. We spoke earlier about receiving a notice of a change in license. I want to direct your attention to Exhibit 5. Can you identify that document for us? *A. Yes. It's an official notice that was mailed out March 24th, 2012, to Guy Christopher Johns.*
> Q. Okay. And again can you explain to the Court how you are able to identify that document? A. It says official notice on it and it has Mr. Johns' name and address.
> Q. Is that notice something that's kept as part of Mr. Johns' official driving records? A. Yes, sir.

She repeated the same, bolstering her own testimony by reference to the bulk mailing notice:

> Q. I want to direct your attention to Exhibit 6 now. Can you identify that document for us? A. This is certificate of bulk mailing from the United States Postal Service.
> Q. Okay. How do you know that's what it is? A. It states right on the top.
> Q. Okay. And is that something that's kept as part of the Defendant's official driving record? A. Yes.
> Q. Okay. So looking at Exhibit 6, can you again explain to the Court kind of what that document tells us? A. That on March

> 28th, 2012, we mailed out 327 identical pieces of mail at the rate and then we get the certificate from the postal service.
>
> Q. How does that relate to the previous exhibits that you have looked at? *A. [T]hat's when the official notice would have gone out.*

(Emphasis added.) Even taking into account the defendant's arguments regarding the bulk mailing notice, viewing the evidence in the light most favorable to the State, including all reasonable inferences to be drawn from the evidence, a jury could conceivably find the department mailed notice based on the testimony of the department representative who explicitly testified the department mailed notice. *See State v. Anderson*, No. 10-1945, 2012 WL 3200864, at *2 (Iowa Ct. App. Aug. 8, 2012) (holding there was sufficient evidence the State mailed notice where department representative testified to the same).